IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

THOMAS J. PENNAVARIA,

      Plaintiff,

   v.

JOHN R. WALTON, Warden, Westmoreland
County Prison, in his official and individual
capacity, ET AL.,

      Defendants.

10-cv-0415
**ELECTRONICALLY FILED**

## MEMORANDUM OPINION

Before the Court are the Defendants' various Motions for Summary Judgment filed pursuant to Fed.R.Civ.P. 56. See doc. nos. 64, 67, 71 and 73. *Pro se* Plaintiff, Thomas Pennavaria filed a Complaint (doc. no. 3) which he amended (doc. no. 42) claiming that while he was an inmate in the Westmoreland County Prison, his civil rights were violated by Defendants warden John E. Walton ("Defendant Walton"), deputy warden Steve Cmar, ("Defendant Cmar"), Westmoreland County ("Defendant County"), corrections officer Richard Planey ("Defendant Planey"), corrections officer Robert Biller ("Defendant Biller"), healthcare provider NaphCare, Inc. ("Defendant NaphCare"), the CEO of Defendant Nalphcare, Lee Harrison ("Defendant Harrison"), and three nurses employed by Nalphcare, William Nicholson ("Defendant Nicholson"), Linda Riggin ("Defendant Riggin"), and Rhonda Gaskill ("Defendant Gaskill").

Defendants Walton, Cmar, and Planey now move this Court to enter summary judgment in their favor. See doc. no. 67. Defendant Biller moves this Court to enter summary judgment in his favor. See doc. no. 64. Defendant County moves this Court to enter summary judgment in its favor. See doc. no. 71. Defendants NaphCare, Harrison, Nicholson, Riggin, and Gaskill

move this Court to enter judgment in their favor. See doc. no. 73.

Plaintiff failed to respond to any of these motions, as directed by the Case Management Order dated June 28, 2010. Doc. no. 34. Plaintiff was present and participated during the initial case management conference where the Case Management Order was discussed, and the final Case Management Order was served on him by the Court. Because Plaintiff's response was due on December 25, 2010, this Court has waited until after the holiday to issue this Opinion.[1]

For the reasons set forth in greater detail below, this Court will grant all of the Defendants' Motions for Summary Judgment.

## I. BACKGROUND

Plaintiff filed a Complaint pursuant to 28 U.S.C. §1983 against the above-named Defendants. See doc. no. 3. After Defendants filed their Motions to Dismiss (doc. nos. 19, 20, 21, 23) and Plaintiff responded (doc no. 31), this Court denied the Motions and permitted Plaintiff to file an Amended Complaint.[2] See doc. no. 38. After Plaintiff filed his Amended Complaint (doc. no. 42), Defendants Biller Cmar, Planey, Walton, and County filed a motion to dismiss (doc. no. 53) which this Court again denied. See doc. no. 58. Discovery then ensued.

The pertinent facts as set forth in the Amended Complaint, although sparse,[3] are as

---

1 This Court also notes that Plaintiff has timely met other deadlines. For example, on June 30, 2010, this Court denied Defendants' respective Motions to Dismiss Plaintiff's original Complaint and instructed Plaintiff to file an Amended Complaint on or before July 28, 2010. Doc. no. 38. Plaintiff filed his Amended Complaint on July 27, 2010, in compliance with this Order. Doc. no. 42.

2 In denying the Defendants' respective Motions to Dismiss Plaintiff's Complaint, this Court held, "Plaintiff's complaint is deficient with regard to specific actions allegedly taken by the individual officers and employees under color of state law that might expose them to liability for violating plaintiff's civil rights. However, plaintiff may be able to cure that deficiency in an amended complaint." Doc. no. 38, p. 7.

3 Plaintiff's Amended Complaint is only six pages in length while his original Complaint was 34 pages in length. In his Amended Complaint, although Plaintiff attempted to comply with the Court's request for more facts pertaining to each of the Defendants, the information provided was scant and he failed to reiterate or restate any of the pertinent information set forth in his original Complaint.

follows:

Plaintiff was incarcerated at the Westmoreland County Prison from March 7, 2008 through August 6, 2008 and from December 28, 2008 through June 1, 2009. Doc. no. 72, ¶ 4; see also doc. no. 3. During his tenure in the Prison, Plaintiff alleges that Defendants Walton and Cmar, "instructed and encouraged corrections officers to use force and inflict pain on inmates." Doc. no. 42, ¶¶ 2, 9.

Plaintiff also alleged that he was denied the right to practice his religion by Defendants Walton, and Cmar. Id. at ¶¶ 2, 9. Specifically, Plaintiff alleged that Defendant Walton denied "entry to any and all Catholic priests . . ." and denied Plaintiff the ability to "make his Easter Duty," make his confession, and receive "the Sacrament of Holy Communion." Id. at ¶ 2.

Next, Plaintiff alleged that Defendants Walton, Cmar, and Planey unjustifiably segregated him from the main population in a unit used for punishment. Id. at ¶¶ 2-3, 9. Specifically, Plaintiff's Amended Complaint indicates that Defendants Walton, Cmar, and Planey refused to re-locate Plaintiff from the medical unit (and/or a unit adjacent to the medical unit) to different unit after he witnessed the death of another inmate in the medical unit. Id. at ¶¶ 2-6, 9.

Plaintiff further alleged that Defendants, NaphCare, Harrison, Nicholson, Riggin, and Gaskill failed to use "accepted procedures for medical treatment of inmates" and/or removed Plaintiff from a medical unit within Westmoreland County Prison, and/or instituted new medical procedures that injured Plaintiff.[4] Id. at ¶ 7.

With respect to Defendant Biller, Plaintiff alleged that he suffered emotional distress when

---

[4] Plaintiff suffers from sleep apnea and while in the Westmoreland County Prison, needed to use an electrical C-PAP machine at night to treat this medical condition. Doc. no. 74, ¶ 28; see also doc. no. 3. Plaintiff also suffers from Type II diabetes mellitus, but does not use insulin to treat it. Doc. no. 72, at ¶¶ 7-8. At the Westmoreland County Prison, Plaintiff received medications for his diabetes two times per day, but many times he refused the medication. Id. at ¶¶ 9-11.

3

he witnessed Defendant Biller mock a dying inmate and when he asked Plaintiff to "aid in his cover-up of negligent homicide." Doc. no. 42, ¶¶ 10-12.

Finally, with respect to Defendant Westmoreland County, Plaintiff essentially alleged that the County was responsible under a *respondeat superior* theory, by averring that Defendant County "[c]ontrols and is responsible for the actions of" the Westmoreland County Prison and the named Defendants. Id. at ¶ 1.

Each of the Defendants filed a Motion for Summary Judgment and Brief in Support with supporting documentary evidence that refutes each of the Plaintiff's allegations. This evidence will be discussed in greater detail below.

Plaintiff has proffered no evidence that contradicts these refutations. To allow the plaintiff to go forward at this stage with his unsupported civil rights claims would contravene Fed.R.Civ.P. 56 as interpreted by the Supreme Court. See, e.g., Celotex Corp. v. Catrett, 477 U.S. 317 (1986).

Therefore, after an extensive review of the record, and according the non-moving party, a *pro se* Plaintiff, the indulgence required, we find that Plaintiff has not presented specific facts showing a genuine issue for trial regarding his civil rights claims. Accordingly, because this Court finds that there is no issue of fact to submit to a jury, each of the Defendants' respective Motions for Summary Judgment will be granted.

## II. STANDARD OF REVIEW

In considering a motion for summary judgment, the court must grant summary judgment "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(a). See also Anderson v. Liberty

Lobby, Inc., 477 U.S. 242, 247 (1986); Federal Home Loan Mortgage Corporation v. Scottsdale Insurance Company, 316 F.3d 431, 443 (3d Cir. 2003).

The moving party asserting that a fact cannot be or is genuinely disputed must support the assertion by: (1) citing to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for purposes of the motion only), admissions, interrogatory answers, or other materials; or (2) showing that the materials cited do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact. Fed.R.Civ.P. 56(c)(1)(A-B).

If a party fails to properly support an assertion of fact or fails to properly address another party's assertion of fact as required by Rule 56(c), the court may: (1) give an opportunity to properly support or address the fact; (2) consider the fact undisputed for purposes of the motion; (3) grant summary judgment if the motion and supporting materials – including the facts considered undisputed – show that the movant is entitled to it; or (4) issue any other appropriate order. Fed.R.Civ.P. 56(e)(1-4).

Although the movant has the initial burden of demonstrating the absence of genuine issues of material fact, the non-movant must then establish the existence of each element on which it bears the burden of proof. See Watson v. Eastman Kodak Company, 235 F.3d 851, 857-858 (3d Cir. 2000). Plaintiffs cannot avert summary judgment with speculation or by resting on the allegations in their pleadings, but rather they must present competent evidence from which a jury could reasonably find in their favor. Ridgewood Board of Education v. N.E. for M.E., 172 F.3d 238, 252 (3d Cir.1999).

## III. DISCUSSION

As an initial matter, this Court notes that although Plaintiff failed to respond to the various Motions for Summary Judgment, and although the facts found in the Amended Complaint are sparse, this Court finds that, based on the Defendants' extensive appendices submitted with their Summary Judgment Motions, the parties have engaged in meaningful discovery and the facts surrounding Plaintiff's claims appear to have been thoroughly fleshed out.  Essentially, Plaintiff's claims boil down to allegations that all of the Defendants violated his civil rights by engaging in cruel and unusual punishment and/or were indifferent to his medical needs while he was imprisoned in the Westmoreland Court Prison.

Defendants' respective Motions to Dismiss address the specific issues which Defendants fleshed out during the course of discovery.  Although each motion will be addressed seriatim below, the Court will first address Plaintiff's broad claim of emotional and/or mental injury which pertains to one or more of the Defendants.

### A. Plaintiff's Emotional Distress Claims

Plaintiff's Amended Complaint essentially alleges that several of the Defendants directly or indirectly caused him to sustain emotional and mental injuries as a result of the cruel and unusual punishment he endured while an inmate in the Westmoreland County Prison.

In Pennsylvania, to succeed on an intentional infliction of emotional distress claim, a plaintiff ". . . must at the least, demonstrate intentional outrageous or extreme conduct by the defendant, which causes severe emotional distress to the plaintiff."  Swisher v. Pitz, 868 A.2d 1228, 1230 (Pa.Super.Ct.2005) (discussing how the Pennsylvania Supreme Court has indicated that, were it to recognize a cause of action for intentional infliction of emotional distress, these

6

would be the requirements necessary for a plaintiff to prevail on such a claim). In addition, "a plaintiff must suffer some type of resulting physical harm due to the defendant's outrageous conduct." Id.

The United States Court of Appeals for the Third Circuit adopted this standard for mental and emotional claims.

> . . . [T]o succeed on an intentional infliction of emotional distress claim, [a plaintiff] must show that she suffered "some type of resulting physical harm due to the defendant's outrageous conduct." *Swisher,* 868 A.2d at 1230. [Plaintiff] has not pointed to any physical harm she suffered as a result of police conduct and, for that reason alone, her intentional infliction of emotional distress claim fails as a matter of law. We thus affirm the District Court's grant of summary judgment on that claim.

Reedy v. Evanson, 615 F.3d 197, 232 (3d Cir. 2010).

Given the state of the law on this matter, Plaintiff would only have a viable claim for emotional distress against any particular Defendant if he had evidence of: (1) outrageous conduct by that particular Defendant; and (2) physical harm suffered as result of that conduct.

Defendants have challenged Plaintiff's claim for emotional distress arguing that he has produced no evidence of physical injury or harm. Plaintiff proffers no evidence to this Court in response. As a result, this Court finds as a matter of law that none of Plaintiff's claims for emotional distress can survive the various Motions for Summary Judgment absent evidence of physical harm. Because plaintiff failed to proffer any such evidence, this Court must dismiss all of Plaintiff's emotional distress claims against all Defendants. See Fed.R. Civ. P. 56.

**B. All Remaining Causes of Action**

**1. Defendant Westmoreland County's Motion for Summary Judgment**

A local government may not be sued under Section 1983 for an injury inflicted solely by its employees or agents. Monell v. Department of Social Services of City of New York, 436 U.S. 658, 695 (1978). Instead, it is when execution of a government's policy or custom, whether made by its lawmakers or by those whose edicts or acts may fairly be said to represent official policy, inflicts the injury that the government as an entity is responsible under Section 1983. Id.

"Policy is made when a decisionmaker possessing final authority to establish municipal policy with respect to the action issues an official proclamation, policy, or edict." Berg v. County of Allegheny, 219 F.3d 261, 275 (3d Cir.2000) (internal quotation marks and citation omitted). In addition, in order to prove that a violation occurred, the plaintiff must show a "direct causal link" between the policy and the constitutional violation. Id.

Plaintiff's Amended Complaint alleges, that Defendant County "[c]ontrols and is responsible for the actions of Westmoreland County Prison, it's[sic.] Warden, offices and medical staff. In addition, to govern policy of the prison. [sic.]" Doc. no. 42 ¶ 1.

Defendant County argues that during the course of discovery, Plaintiff was asked what policy or custom instituted by Defendant County caused a deprivation of Plaintiff's rights. According to Defendant County, Plaintiff supplied an excerpt from the Westmoreland County Prison Inmate Handbook as follows:

> 42. USE OF FORCE AND RESTRAINT
> The use of force has been authorized for all staff at Westmoreland County Prison and will be used to prevent escape; to prevent death or injury to staff, inmates or other persons; to protect property, to recapture and escapee, to prevent an inmate from inflicting injury on himself; and to cause an inmate to comply with a lawfully given order that the inmate physically resists.

> The staff at Westmoreland County Prison are trained t use just enough force necessary to achieve their authorized purpose and to stop the use of force when that purpose has been achieved. Staff MUST and WILL resort to physical force if you give them no other alternative.

Because Plaintiff failed to respond the Defendant County's Motion for Summary Judgment, the Court can only assume that Plaintiff produced this excerpt as evidence of a "policy" which Defendant County promulgated or adopted. This policy, on its face, does not violate Plaintiff's Constitutional rights. In addition, Plaintiff failed to provide any direct causal link as to how this policy caused him to be deprived of his Constitutional rights. See Doc. no. 74, ¶¶ 17, 24-25, 32, and 34.

Accordingly, based on the foregoing law and authority, this Court does not find that there is a genuine dispute as to any material fact with respect to Plaintiff's claim(s) against Defendant County, and thus, summary judgment will be entered in favor of the County.

**2. Defendants Walton's, Cmar's and Planey's Motion for Summary Judgment**

Like the Defendant County, Defendant Walton as the warden, and/or Defendant Cmar as the deputy warden, cannot be held liable for acts of subordinates based on a *respondeat superior* theory. See Ashcroft v. Iqbal, 129 S.Ct. 1937, 1948 (2009) (government officials may not be held liable for the unconstitutional conduct of their subordinates under a theory of *respondeat superior*).

**a. First Amendment Right to Freedom of Religion**

Plaintiff alleges that he was deprived of his First Amendment right to freedom of religion by Defendants Walton, Cmar, and Planey when he was denied an opportunity to practice his Catholic faith while in the prison. Because plaintiff has asserted a First Amendment violation, Plaintiff had to plead (and would have to prove) that each Defendant acted with discriminatory

9

purpose. Id. citing Church of Lukumi Babalu Aye, Inc. v. Hialeah, 508 U.S. 520, 540-541 (1993).

As further noted by the Court in Iqbal:

Under extant precedent purposeful discrimination requires more than "intent as volition or intent as awareness of consequences." Personnel Administrator of Mass. v. Feeney, 442 U.S. 256, 279, 99 S.Ct. 2282, 60 L.Ed.2d 870 (1979). It instead involves a decisionmaker's undertaking a course of action " 'because of,' not merely 'in spite of,' [the action's] adverse effects upon an identifiable group." IbId.

Id.

Based on the Plaintiff's answers to interrogatories supplied by Defendants Walton, Cmar, and Planey, Plaintiff essentially admits that he did not complain to Defendants Walton, Cmar or Planey at any time about any deprivation of his right to practice his faith. Doc. no 68-3 pp. 1-3; doc. no. 68-4 pp.1-3; doc no. 68-5 pp.1-3. These same interrogatory answers fail to pinpoint any injury or injuries he suffered as a result of any alleged deprivation of his First Amendment right. Id.

In addition, Defendant Walton provided a document written and signed by Plaintiff during his incarceration thanking Defendant Walton for "granting permission to meet with Chaplain Bedamo ." Doc. no. 68-7. This letter also indicated that Plaintiff had been unable to attend services held by the chaplain because Plaintiff had been held in a locked medical unit (and would remain there until he was returned to federal prison in Colorado), and it was against the rules of the medical unit to allow Plaintiff to leave the unit to attend services on another floor of the prison. Id.

Defendants Walton, Cmar, and Planey also provided sworn affidavits in support of their collective Motion for Summary Judgment. See doc. nos. 68-7, 68-9, 68-10. They each indicate that Plaintiff did not complaint to them about his inability to practice his religion while

incarcerated and that he never complained of a deprivation to his right to religious freedom. Id.

The Defendants also provided deposition transcript excerpts of the Plaintiff wherein he admitted that he never complained to Defendants Warden or Planey, but felt that he complained to Defendant Cmar about his inability to practice his faith. Doc. no. 68-2. P. 170. However, he admitted that he never made a formal request to Defendant Cmar, and if he had, he would have retained a copy of it for his own records. Id. Plaintiff also admitted that he did meet with Chaplain Bedamo, and that he received a bible and communion from him. Id at 174. However, Plaintiff claimed the bible he was given was "against his religion" because it was a King James version, and that the communion he received was not blessed and therefore not acceptable. Id.

Finally, Defendants Walton, Cmar, and Planey provided an affidavit submitted by Chaplain Bedamo. Doc. no. 68-8. In it, he states that he responded to a request slip from Plaintiff who was incarcerated at Westmoreland County prison. Id. The document also states that he provided ministry to Plaintiff over the Easter period in 2008 and met with Plaintiff (and others housed in the medical units) on a weekly basis. Id. The affidavit indicates he provided Plaintiff with a bible and rosary and provided Plaintiff with communion on a number of occasions. Id. The chaplain also stated that at no time did Plaintiff voice any concerns to him about his inability to practice his faith. Id.

Based upon the totality of this evidence and having received no proffer from Plaintiff, this Court does not find that there is a genuine dispute as to any material fact with respect to Plaintiff's claims against Defendants Walton, Cmar, or Planey for a violation of Plaintiff's First Amendment right to freedom of religion, and thus, summary judgment will be entered in favor of these Defendants as to Plaintiff's First Amendment claims.

### b. Eighth Amendment Excessive Force / Inappropriate Housing

Plaintiff alleged in his Amended Complaint that Defendants Walton, Cmar, and Planey either instructed or actually used force and inflicted pain "on inmates." Doc. no. 42, ¶ 2. The Amended Complaint fails to assert that any of these Defendants actually used force or inflicted pain on Plaintiff himself.

In addition, Defendants Walton, Cmar, and Planey provided an excerpt from Plaintiff's deposition transcript where he admits that no staff member used excessive force on him. Doc no. 68-2, pp. 167, 188.

During discovery, Plaintiff produced a portion of the inmate handbook, quoted above, that indicates when force is authorized to be used by prison staff. As noted above, on its face this policy does not violate any of Plaintiff's Constitutional rights.

Finally, to the extent that Plaintiff's Eighth Amendment claim against these three Defendants pertains to his being housed in medical units while at the Westmoreland County Prison, Defendants point out that Plaintiff needed to be in those units because of (1) his medical conditions, and (2) the device used to treat one of his conditions (sleep apnea) required the use of a C-PAP machine which was an electrical device. Such a device poses security risks if placed in an unsecured (general population) unit.

In support of these facts concerning Plaintiff's need to be housed in the medical units of the prison, each of the Defendants supplied statement in their sworn affidavits indicating that Plaintiff had to be housed in a medical unit primarily because the device used to treat his sleep apnea was an electrical machine that would pose a security risk if he were not housed within the medical units. Doc nos. 68-7, 68-9, 68-10.

Again, based upon the totality of the evidence presented by Defendants Walton, Cmar, and Planey, and having received no proffer from Plaintiff, this Court does not find that there is a genuine dispute as to any material fact with respect to Plaintiff's Eighth Amendment claims against Defendants Walton, Cmar, or Planey. Therefore, summary judgment will be entered in favor of these Defendants as to Plaintiff's Eighth Amendment claims.

### 3. Defendants NaphCare, Harrison, Nicholson, Riggin, and Gaskill's Motion for Summary Judgment

Plaintiff has asserted an Eighth Amendment claim against Defendants NaphCare, Harrison, Nicholson, Riggin, and Gaskill (hereinafter "the Medical Defendants") for their treatment, or lack thereof, while Plaintiff was incarcerated in Westmoreland County Prison.

The government is obligated to provide medical care for those whom it is punishing by incarceration. Estelle v. Gamble, 429 U.S. 97, 103 (1976). " '[D]eliberate indifference to serious medical needs of prisoners constitutes the "unnecessary and wanton infliction of pain,' Gregg v. Georgia, [428 U.S. 153, 173 (1976)], proscribed by the Eighth Amendment." Id. at 104.

More recently, the Supreme Court has held that a court must apply a two-pronged inquiry to determine whether a violation of the Eighth Amendment has occurred. Wilson v. Seiter, 501 U.S. 294, 298-299 (1991). Specifically the Wilson Court required: (1) an objective inquiry into the qualitative nature of the harm suffered by the victim of the alleged punishment, and (2) a "subjective inquiry" into the mind of the person inflicting the harm. Id.

Here, Plaintiff's Amended Complaint is less than clear as to his allegations concerning the Medical Defendant's deliberate indifference to his medical needs. In fact, Plaintiff's Amended Complaint appears to be alleging that he should not have been housed in a medical facility at all. See doc. no. 42, ¶ 6, where Plaintiff claims, "medical lockup was to be used only for inmates who

13

require constant monitoring and recovery." However, Plaintiff also alleged in his Amended Complaint that Defendant NaphCare was "in violation of accepted medical treatment of inmates." Id. at ¶ 7.

After reviewing all of the evidence of record, there is no evidence proffered by Plaintiff to illustrate either the qualitative harm he suffered (i.e., this Court has no medical records showing any sort of physical harm Plaintiff sustained as a result of any alleged inadequate medical treatment), or the mindset of the Medical Defendants who allegedly inflicted this inadequate medical treatment.

Once again, based upon the utter lack of any evidence from Plaintiff, this Court does not find that there is a genuine dispute as to any material fact with respect to Plaintiff's Eighth Amendment claims against the Medical Defendants. Accordingly, all claims against Defendants NaphCare, Harrison, Nicholson, Riggin, and Gaskill shall be dismissed.

### 4. Defendant Biller's Motion for Summary Judgment

Plaintiff's Amended Complaint essentially asserts only an emotional distress claim against Defendant Biller. As noted in subpart "A." above, no emotional distress claim can survive these Motions for Summary Judgment due to Plaintiff's failure to produce any evidence of "some type of resulting physical harm due to the defendant's outrageous conduct." Accordingly, due to the lack of evidence, Plaintiff's claims against Defendant Biller will be dismissed as Defendant Biller's Motion will be granted.

### IV. CONCLUSION

Because each movant has shown that there is no genuine dispute as to any material fact, and because each movant is entitled to judgment as a matter of law, each of the Defendant's

respective Motions for Summary Judgment will be granted.[5]

An appropriate Order follows.

                                                                                                        s/    Arthur J. Schwab
                                                                                                       United States District Judge

December 30, 2010

cc:     All Registered ECF Counsel and Parties

Thomas J. Pennavaria
966 E. 800 South
Bountiful, UT 84010
PRO SE PLAINTIFF

---

[5] This Court notes that even upon consideration of the allegations set forth against any of the Defendants in the original Complaint, which, for some Defendants, were more voluminous in nature, Plaintiff has proffered no evidence to support any of these original allegations, nor to refute any of the evidence Defendants have proffered.